UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| TRAVIS UNIFIED SCHOOL DISTRICT,<br><br>    Plaintiff,<br><br>    v.<br><br>DONALD BELL and DEBRA BELL, individually and as parents on behalf of C.B., a minor,<br><br>    Defendants. | Civ. No. 2:17-0808 WBS AC<br><br>MEMORANDUM AND ORDER RE: MOTION FOR PARTIAL DISMISSAL AND SPECIAL MOTION TO STRIKE IN PART |

----oo0oo----

Plaintiff Travis Unified School District brought this action against defendants Donald and Debra Bell, alleging that defendants breached an agreement the parties had entered into for the provision of special education services to defendants' son, C.B. (Compl. (Docket No. 1).) Before the court are defendants' Motion to dismiss and special Motion to strike two of the three causes of action alleged by plaintiff in this action. (Defs.' Mot. (Docket No. 8); Defs.' Special Mot. (Docket No. 12).)

1

I.   Factual and Procedural Background

C.B. is a student at Vanden High School, a public high school supervised by plaintiff. (See Compl. ¶ 2.) He suffers from type 1 neurofibromatosis, a genetic disorder that impacts his brain development and causes him to experience learning difficulties. (Id.) He is eligible for special education services under the Individuals with Disabilities Education Act ("IDEA"). (Id. ¶ 16.)

Since the end of the 2014-2015 school year, plaintiff and defendants have disputed whether the specialized reading and writing classes offered by plaintiff to C.B. satisfy the free appropriate public education ("FAPE") standard set forth in the IDEA.[1] (See id. ¶ 3.) Defendants have taken the position that such classes do not satisfy the FAPE standard, and the most appropriate way to address C.B.'s reading and writing deficiencies is to have C.B. receive private reading and writing lessons in lieu of the classes. (See id.) Plaintiff has taken the position that the classes do satisfy the FAPE standard, and private lessons are not necessary. (See id. ¶ 4.)

In July 2015, defendants filed a complaint with the

---

[1] "The IDEA requires that all states receiving federal funds for education . . . provide disabled school children with a FAPE." Covington v. Yuba City Unified Sch. Dist., 780 F. Supp. 2d 1014, 1020 (E.D. Cal. 2011) (England, J.) (citing 20 U.S.C. § 1412(a)(1)(A)). An education is a FAPE only if it is "tailored to the [student's] unique needs" and "reasonably calculated to provide the student with some educational benefit." Id. (citing 20 U.S.C. § 1401(9)). Where a school district fails to provide a disabled student a FAPE, the student's parents "may unilaterally remove [him] from the public school, place him . . . in another educational institution, and seek tuition reimbursement for the cost of the alternate placement." Id. (citing 20 U.S.C. § 1412(a)(10)(C)).

California Office of Administrative Hearings ("OAH"), challenging the adequacy of plaintiff's reading and writing classes under the FAPE standard. (Id. ¶ 3.) In October 2015, the parties reached a settlement agreement wherein plaintiff agreed to fund C.B.'s private reading and writing lessons and allow C.B. to miss the first two periods of school to receive such lessons for the first half of the 2015-2016 school year. (See id.)

In January 2016, the parties convened an individualized education program ("IEP") meeting, at which plaintiff informed defendants that it would not be consenting to the October 2015 arrangement going forward. (See id. ¶ 4.) Defendants then filed a new OAH complaint. (Id.)

In March 2016, the parties reached another settlement agreement wherein, in exchange for defendants' agreement to drop the pending OAH complaint and waive all compensatory education claims against plaintiff for the 2015-2016 school year, plaintiff agreed to extend the October 2015 arrangement to the second half of the 2015-2016 school year and reimburse a portion of the attorneys' fees incurred by defendants in bringing their OAH actions. (See Compl. Ex. B., March 2016 Agreement (Docket No. 1-2); Pl.'s Opp'n to Defs.' Special Mot. at 3-4, 16 (Docket No. 14).) The March 2016 settlement agreement contained the following clause ("'stay put' clause"): "Should the Parties disagree with the next annual placement and services offered for [C.B.] at the IEP meeting that will be held on or before May 18, 2016, the Parties agree that [C.B.'s] 'stay put' placement and program will be a full-time district program at Vanden High School with the same amount of services and goals as identified

3

[at the] January 14, 2016 IEP [meeting.  The] 'stay put' placement will not include any outside, private instructional services arranged for [C.B.] by [defendants]."  (March 2016 Agreement ¶ 2(I).)

The parties convened an IEP meeting on May 17, 2016.  (Compl. ¶ 6.)  At the meeting, plaintiff offered C.B. the same level of placement and services it offered him at the January 2016 meeting, which did not include private reading and writing lessons.  (See id. ¶ 7; Pl.'s Opp'n to Defs.' Special Mot. at 4-5.)  Defendants declined to accept that offer.  (Compl. ¶ 7.)

Defendants thereafter filed a third OAH complaint, challenging the adequacy of plaintiff's May 2016 offer under the FAPE standard and demanding for C.B. an arrangement similar to the October 2015 arrangement for the 2016-2017 school year.  (See id.; Pl.'s Opp'n to Defs.' Special Mot. at 5-6.)  Defendants notified plaintiff that they intended to unilaterally continue C.B.'s private lessons during the 2016-2017 school year and would be seeking reimbursement for such lessons from plaintiff via their OAH action.  (Compl. ¶ 7; Pl.'s Opp'n to Defs.' Special Mot. at 5.)

About three weeks into the 2016-2017 school year, defendants began to pull C.B. out of the first two periods of school to attend private reading and writing lessons.  (Compl. ¶¶ 11-12.)  In January 2017, the OAH issued a decision finding the reading and writing education plaintiff offered to C.B. at the May 2016 IEP meeting to be inadequate under the FAPE standard and ordering plaintiff to reimburse defendants for private reading and writing lessons provided to C.B. until it makes a

satisfactory offer of reading and writing education to C.B.[2] (See id. ¶ 13; Compl. Ex. A, OAH Decision at 21-24 (Docket No. 1-1).)  Plaintiff has not made a new offer of education to C.B. since the decision.  (See Compl. ¶ 13.)

Plaintiff filed this action in April 2017.  (Compl.)  It brings three causes of action against defendants: (1) appeal of the OAH's January 2017 decision, 20 U.S.C. § 1415; (2) breach of contract; and (3) declaratory relief.  (Id. at 8, 12, 15.)  Plaintiff's breach of contract claim alleges that defendants breached the "stay put" clause by unilaterally removing C.B. from school to attend private reading and writing lessons during the 2016-2017 school year and seeking reimbursement for such lessons.  (Id. ¶ 32.)  Plaintiff's declaratory relief claim seeks a declaration from the court that under the "stay put" clause, defendants may not remove C.B. from school to attend private reading and writing lessons during the pendency of the parties' dispute over his education or seek reimbursement for such lessons.  (See id. ¶ 41; Pl.'s Opp'n to Defs.' Special Mot. at 19, 25.)

Defendants now move to dismiss plaintiff's breach of contract and declaratory relief claims pursuant to Federal Rule of Civil Procedure 12(b)(6) based on the contention that the "stay put" clause does not prohibit them from removing C.B. from school to attend private reading and writing lessons during the pendency of the parties' dispute or seeking reimbursement for

---

[2] Plaintiff alleges that it raised, and the presiding ALJ refused to enforce, the "stay put" clause.  (See Compl. ¶ 14.)

such lessons.[3]  (See Defs.' Mot. at 4-5.)

## II. Discussion

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Iqbal, 556 U.S. at 67.

Agreements settling IDEA disputes between parents and school districts are recognized as contracts.  See G.M. ex rel. Marchese v. Drycreek Joint Elementary Sch. Dist., CIV NO. 2:10-0944 GEB, 2012 WL 3913403, at *26 (E.D. Cal. Sept. 7, 2012) (enforcing agreement settling IDEA dispute between parents and school district); Pedraza v. Alameda Unified Sch. Dist., No. 05-4977 CW, 2011 WL 4507111, at *13 (N.D. Cal. Sept. 29, 2011) (same); cf. T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist., 806 F.3d 451, 482 (9th Cir. 2015) ("[P]ublic policy plainly favors upholding the [IDEA] settlement agreement entered between [the minor's] parents and the [school] Board.").  In interpreting such agreements, courts have applied the contract law of the state in which the school district is located.  See Marchese, 2012 WL 3913403, at *24 (applying California contract

---

[3] Defendants also move to strike plaintiff's breach of contract and declaratory relief claims pursuant to California's Anti-Strategic Lawsuits Against Public Participation statute, Cal. Civ. Code § 425.16.  (Defs.' Special Mot.)

law in interpreting IDEA settlement agreement involving California school district); Pedraza, 2011 WL 4507111, at *10 (same).

Under California law, a "contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. "Such intent is to be inferred, if possible, solely from the written provisions of the contract." TRB Investments, Inc. v. Fireman's Fund Ins. Co., 40 Cal. 4th 19, 27 (2006). "The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation." Id. (citing California Civil Code sections 1638 and 1644). Where, as here, the meaning of the contractual provision at issue "does not turn on the credibility of extrinsic evidence, interpretation is a question of law, and [the court] independently determine[s] the [provision's] meaning."[4] People v. Doolin, 45 Cal. 4th 390, 413 n.17 (2009) (citing Parsons v. Bristol Dev. Co., 62 Cal. 2d 861, 865-66 (1965)).

The contractual language at issue here--that "[s]hould

---

[4] Plaintiff and defendants raise a number of factual disputes as to what the other sides subjectively believed at the time of the March 2016 settlement agreement. (See Defs.' Reply in Supp. of Special Mot. at 6-7 (Docket No. 17); Pl.'s Sur-Reply in Opp'n to Defs.' Special Mot. at 3-4 (Docket No. 20-1).) Such disputes are not material to interpretation of the agreement. See Iqbal v. Ziadeh, 10 Cal. App. 5th 1, 8 (3d Dist. 2017) ("California recognizes the objective theory of contracts under which it is the objective intent, as evidenced by the words of the contract, rather than the subject intent of one of the parties, that controls interpretation.").

1  the Parties disagree with [C.B.'s 2016-2017] placement . . . the
2  Parties agree that [C.B.'s] 'stay put' placement and program will
3  be a full-time district program at Vanden High School . . . [and]
4  will not include any outside, private instructional services"--
5  does not expressly prohibit defendants from removing C.B. from
6  school to attend private lessons during the pendency of their
7  dispute with plaintiff or seeking reimbursement for such lessons.
8  The words "stay put" are not defined in the March 2016 settlement
9  agreement.

10       Plaintiff contends that "stay put" is an adjective used
11  to identify the only education C.B. is permitted to receive
12  during the pendency of the parties' dispute.  (See Pl.'s Opp'n to
13  Defs.' Special Mot. at 26.)  Because the "stay put" clause states
14  that C.B.'s "stay put" education is a full-time placement at
15  Vanden High School with no private lessons, it impliedly
16  prohibits defendants from taking C.B. out of school for private
17  lessons during the pendency of the parties' dispute and seeking
18  reimbursement for such lessons, according to plaintiff.  (See id.
19  at 12, 28.)

20       Defendants, on the other hand, contend that "stay put"
21  is a term of art used to reference 20 U.S.C. § 1415(j) ("section
22  1415(j)").  Section 1415(j) provides: "[D]uring the pendency of
23  [an administrative challenge to an offer of education], unless
24  the State or local educational agency and the parents otherwise
25  agree, the child shall remain in [his] then-current educational
26  placement."  In Sch. Comm. of Town of Burlington, Mass. v. Dep't
27  of Educ. of Mass., 471 U.S. 359 (1985), the Supreme Court held
28

8

that parents who violate section 1415(j)[5] by unilaterally taking their child out of school during the pendency of an administrative challenge to the child's offer of education are not barred from seeking reimbursement for their alternative placement of the child from the school. See id. at 371-74. Contending that the "stay put" clause is coextensive with section 1415(j) and citing Burlington, defendants contend that the "stay put" clause does not bar them from taking C.B. out of school during their dispute with plaintiff and seeking reimbursement of C.B.'s private lessons from plaintiff. (See Defs.' Mot. at 5-6.)

Both plaintiff's interpretation and defendants' interpretation of the "stay put" clause require the court to read into the agreement much more than is there. To the extent plaintiff contends that its definition of "stay put" comports with the ordinary meaning of those words, plaintiff offers no explanation for why those words are put in quotes, which suggests that they may have a technical or specialized meaning different from the meaning plaintiff offers. Even if the court were to adopt plaintiff's definition of "stay put," there would be a question as to what prohibitions, if any, the "stay put" clause imposes against defendants, as the clause does not expressly mention any actions defendants are prohibited from taking.[6]

---

[5] Section 1415(j) was then 20 U.S.C. § 1415(e)(3).

[6] Plaintiff asks the court to consider defendants' post-May 2016 behavior in interpreting the "stay put" clause. (See Pl.'s Opp'n to Defs.' Special Mot. at 30-32.) It notes that after the May 2016 IEP meeting, defendants appeared to waver between conceding to the education referred to in the "stay put" clause and continuing to have C.B. take private lessons. (See id. at 5-10.) Defendants sent conflicting written notices to

9

It is far from clear that the term "stay put" in the agreement, as defendant contends, refers to the provisions of section 1414(j).  Nowhere in the agreement is section 1415(j) mentioned.  Section 1415(j) itself does not use the words "stay put."[7]  Even if the court were to accept defendants' contentions that "stay put" is a reference to section 1415(j) and the "stay put" clause is coextensive with that statute, it is unclear how Burlington's interpretation of section 1415(j) would affect the outcome of plaintiff's breach of contract and declaratory relief claims.  Burlington did not exonerate parents from all consequences for taking their children out of school during administrative challenges, as defendants suggest, and expressly

---

plaintiff as to their plans for C.B. for the 2016-2017 school year, and had C.B. attend full days of school for the first three weeks of the school year.  (See Compl. ¶¶ 7-12.)  Defendants' wavering suggests that they understood the "stay put" clause to set forth the prohibitions plaintiff contends it sets forth, according to plaintiff.

That defendants wavered as to their plans for C.B. after the May 2016 IEP meeting does not necessarily indicate that they agreed with plaintiff's interpretation of the "stay put" clause.  It may have been that defendants wavered because they were open to trying the full-time school placement to see how it would work for C.B. or wary that plaintiff would bring action to enforce obligations they never believed they owed under the "stay put" clause. Particularly revealing is the fact that defendants' first written notice to plaintiff after the May 2016 IEP meeting was a notice of unilateral placement in private instruction for C.B., sent on July 7, 2016.  (See id. ¶ 7.)  It was only after plaintiff responded to that notice with threat of legal action that defendants began to waver as to their initial position. (See id. ¶ 8.)  For these reasons, the court finds plaintiff's 'wavering' argument to be unpersuasive.

[7]   In Johnson ex rel. Johnson v. Special Educ. Hearing Office, State of Cal., 287 F.3d 1176 (9th Cir. 2002), the Ninth Circuit noted that section 1415(j) is "commonly referred to as the 'stay put' provision."  Id. at 1179.  That case is not cited in the March 2016 settlement agreement, however.

referred to the act of taking one's child out of school in contravention of section 1415(j) as a "violation" of that statute. See Burlington, 471 U.S. at 372-74.

On balance, the court finds the "stay put" clause too vague to be enforceable. The clause does not define "stay put" with sufficient clarity. Even if the court were to adopt plaintiff's or defendants' interpretation of "stay put," neither interpretation would resolve plaintiff's breach of contract and declaratory relief claims, as explained above. Because the "stay put" clause is "so uncertain and indefinite that the intention of the parties [as to the] material particulars [of the clause] cannot be ascertained," the clause is simply unenforceable. See Ladas v. California State Auto. Assn., 19 Cal. App. 4th 761, 770 (1st Dist. 1993) ("Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable." (citing California Lettuce Growers v. Union Sugar Co., 45 Cal. 2d 474, 481 (1955) and California Civil Code section 1598)); Moncada v. W. Coast Quartz Corp., 221 Cal. App. 4th 768, 777 (6th Dist. 2013) (same).

IT IS THEREFORE ORDERED that defendants' Motion to dismiss plaintiff's second and third causes of action be, and the same hereby is, GRANTED. Plaintiff's second and third causes of action are DISMISSED WITH PREJUDICE.

Defendants' special Motion to strike plaintiff's second and third causes of action is DENIED AS MOOT.

Dated: July 28, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE